**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────────

**ESTATE OF EMERICK ALAN COLEMAN,**
**BY CAROL CLEVELAND, ADMINISTRATRIX**
**AND MOTHER AND GUARDIAN OF KHALIL**
**NICHOLAS COLEMAN-CLEVELAND,**

|  |  |  |
|---|---|---|
| | **Plaintiff,** | **05-CV-0441A(Sr)** |

**v.**

**CON-VEY/KEYSTONE, INC., et al.,**

                        **Defendants.**

─────────────────────────────────


<u>**REPORT, RECOMMENDATION AND ORDER**</u>

          This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #12.


          Currently before the Court is a motion to dismiss plaintiff's first, second, third, fourth and fifth causes of action against defendant Stone & Webster, Inc., and first cause of action against The Shaw Group, Inc. (Dkt. #8), as well as defendant Con-Vey/Keystone, Inc.'s seventeenth affirmative defense and cross claim against The Shaw Group, Inc., and nineteenth affirmative defense and cross claim against Stone & Webster, Inc.  Dkt. #13.  For the following reasons, it is recommended that the motions be converted to motions for summary judgment and granted.

## BACKGROUND

In 1998-1999, Con-Vey/Keystone, Inc., sold a conveyor system to Great Lakes MDS, LLC, formerly known as CanFibre of Lackawanna, LLC ("CanFibre").  Dkt. #1, ¶ 6.  Plaintiff alleges that Stone & Webster, Inc. and Stone & Webster Engineering Corporation contracted with CanFibre to install the conveyor system and subsequently provide engineering and consulting services with respect to the conveyor system.  Dkt. #1, ¶ ¶ 7, 8, 29.

Stone & Webster, Incorporated, a Delaware corporation that exists as a holding company for 72 direct and indirect subsidiaries, including Stone & Webster Engineering Corporation, filed a voluntary Chapter 11 petition in the U.S. Bankruptcy Court for the District of Delaware on June 2, 2000.  *See In re Stone & Webster, Incorporated*, 286 B.R. 532, 534 (Bankr. D. Del. 2002).  By Order dated July 13, 2000, the United State District Court  for the District of Delaware approved the sale of assets by Stone & Webster, Incorporated and its subsidiaries to a Louisiana corporation, SWINC Aquisition Three, Inc., a designee of The Shaw Group, Inc.  Dkt. #10-3; Dkt. #23-2.  The District Court specifically found and determined that:

> Except as expressly permitted or otherwise specifically provided for in the Shaw Agreement or this Sale Order, the (1) transfer of the Assets to Shaw and (ii) assumption and assignment to Shaw of the Assumed Contracts and Assumed Liabilities (as defined in the Shaw Agreement), will not subject Shaw to any liability whatsoever with respect to the operation of the Debtors' businesses prior to the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without

> limitation, any theory of equitable law, including, without
> limitation, any theory of antitrust or successor or transferee
> liability.

Dkt. #10-3, pp.11-12.  Accordingly, the District Court ordered that:

> The transfer of the Assets pursuant to the Sale shall not
> subject Shaw to any liability, except as expressly permitted
> or otherwise specifically provided for in the Shaw Agreement
> or in this Sale Order with respect to the operation of the
> Debtors' businesses prior to the Closing Date or by reason
> of such transfer under the laws of the United States, any
> state, territory, or possession thereof, or the District of
> Columbia, based, in whole or in part, directly or indirectly, on
> any theory of law or equity, including, without limitation, any
> theory of equitable subordination or successor or transferee
> liability.

Dkt. #10-3, p.25.


The Asset Purchase Agreement was executed by The Shaw Group, Inc.,

and Stone & Webster, Incorporated, as well as it's subsidiary, Stone & Webster

Engineering Corporation, with an effective date of July 14, 2000.  Dkt. #9-3.  The Asset

Purchase Agreement included "all interests of Sellers in the Assumed Contracts," but

excluded Rejected Contracts and Completed Contracts, as set forth in separate

schedules.  Dkt. #9-3.  Three projects with CanFibre are listed on the schedule of

Completed Contracts and one project with CanFibre is listed on the schedule of Project

Rejected Contracts.  Dkt. #9-3.  An Operation and Maintenance Agreement between

CanFibre and Stone & Webster Operating Corporation is included in the list of assumed

contracts, but C. Robert Mann, former Vice President of Stone & Webster Operating

Corporation, affirms that he terminated this agreement effective July 6, 2000.  Dkt. #44,

Exh. A, p.1028; Dkt. #46, Exh. A & B.

SWINC Acquisition Three, Inc., amended its Articles of Incorporation to change the name of the corporation to Stone & Webster, Inc., on July 19, 2000.  Dkt. #23-2.

On March 13, 2003, during the course of his employment at Great Lakes, Emerick Alan Coleman sustained fatal personal injuries when he was struck by a product being moved by the conveyor system.  Dkt. #1, ¶ 10.

Plaintiff commenced suit in New York State Supreme Court, Erie County, on March 10, 2005.  Dkt. #1.  The action was removed to this Court in accordance with 28 U.S.C. § 1446.  Dkt. #1.  As relevant to the instant motion, plaintiff alleges that Stone & Webster, Inc. is liable to plaintiff based on theories of negligence; strict liability; breach of the implied warranty of fitness of purpose; and tort.  Dkt. #1.  Plaintiff also seeks punitive damages from Stone & Webster, Inc.  Dkt. #1, ¶ 36.   Plaintiff seeks to hold The Shaw Group, Inc., liable as a successor-in-interest to Stone & Webster, Inc., and/or Stone & Webster Engineering Corporation.  Dkt. #1, ¶ ¶ 40, 42.   In its Verified Answer, as relevant to the instant motion, Con-Vey/Keystone, Inc., asserts an affirmative defense and cross claim for indemnity and/or contribution against The Shaw Group, Inc. and Stone & Webster, Inc.  Dkt. #14.

## DISCUSSION AND ANALYSIS

The Shaw Group, Inc., moves to dismiss the complaint and cross claims against it and it's Louisiana corporation, Stone & Webster, Inc., as barred by the Order

of the United States District Court for the District of Delaware approving the Asset

Purchase Agreement between The Shaw Group, Inc., and Stone & Webster,

Incorporated, a Delaware corporation.  Dkt. #8-4.

Conversion of Motion to Summary Judgment

In support of its motion to dismiss, the moving defendants attached

portions of the Asset Purchase Agreement and schedules.  Dkt. #9-3.  The moving

defendants also informed the Court that they were prepared to submit a complete copy

of the Asset Purchase Agreement to the Court or the parties upon request.  Dkt. #8-3,

¶ 8.  By Order entered June 29, 2006, the Court directed the moving defendants to

supplement their papers to include Schedule 2.01(e), the List of Assumed Contracts, to

the Asset Purchase Agreement.  Dkt. #43.

The List of Assumed Contracts includes an Operation and Maintenance

Agreement between CanFibre and Stone & Webster Operating Corporation.  Dkt. #44,

Exh. A, p.1028.  However, C. Robert Mann, former Vice President of Stone & Webster

Operating Corporation, submitted a declaration explaining that he terminated this

agreement effective July 6, 2000, prior to the bankruptcy court's approval of the sale of

assets or the execution of the Asset Purchase Agreement.  Dkt. #46, Exh. A & B.

The asset purchase documents could be considered by the Court on a

motion to dismiss because plaintiff's complaint relies upon the bankruptcy court's

approval of the asset purchase agreement to assert liability against The Shaw Group,

Inc., as a successor in interest to the Stone & Webster defendants. *See Chambers v. Time-Warner, Inc.*, 282 F.3d 147, 152-154 (2d Cir. 2002). However, the declaration of C. Robert Mann contains information and documents beyond that which was relied upon in the complaint. As a result, the Court notified the parties that it intended to convert the motion to dismiss to a motion for summary judgment as provided by Fed. R. Civ. P. 12(b), and afforded the parties an opportunity to present any relevant material in support or opposition to a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. #47.


Summary Judgment Standard

_____Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted). A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982.   A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and
> invoke the appropriate statute.  The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


<u>Stone & Webster, Inc</u>.

Plaintiff's first, second, third, fourth and fifth causes of action are each premised upon the involvement of Stone & Webster Engineering Corporation and/or Stone & Webster, Inc. in the engineering, design, construction and/or installation of the conveyor system.  Dtk. #1.  It is clear, however, that the Stone & Webster, Inc., which has answered this action was incorporated in Louisianna as SWINC Acquisition Three, Inc., on July 4, 2000.  Dkt. #23-2.


Plaintiff's counsel recognizes that he served both Stone & Webster, Inc. and Stone & Webster Engineering Corporation, which has not appeared in this action, at an "incorrect address for service" in Stoughton, Massachusetts.  Dkt. #20, ¶ 7, n.1. The Court notes that the Stoughton, Massachusetts address is the address for the

Louisiana corporation, Stone & Webster, Inc.  Dkt. #46, ¶ 1.  Moreover, the docket

sheet for the bankruptcy action of the Delaware corporations contains a Boston,

Massachusetts address for Stone & Webster, Incorporated.  *See* No. 00-02142 (Bankr.

D. Del.).  Thus, the defendant Stone & Webster, Inc.'s  only relationship to the

corporation alleged to have been involved in the engineering, design, construction

and/or installation of the conveyor system is through its acquisition of certain assets

from the Delaware corporation, which has not been served.


        The Court's review of the list of assumed contracts set forth in the Asset

Purchase Agreement reveals that the only potentially relevant contract is an Operation

and Maintenance Agreement between CanFibre and Stone & Webster Operating

Corporation.  Dkt. #44, Exh. A, p.1028.   However, this contract was terminated by

Stone & Webster Operating Corporation effective July 6, 2000, which is prior to the

bankruptcy court's July 13, 2000 approval of the sale of assets and the July 14, 2000

effective date of the Asset Purchase Agreement.  Dkt. #46, Exh. A & B.  Thus, at the

time that SWINC Acquisition Three, Inc., assumed the assets set forth in the Asset

Purchase Agreement, there was no contract between the Delaware corporation and

CanFibre for the Louisianna corporation to assume.


The Shaw Group, Inc.

        Plaintiff's first cause of action against The Shaw Group, Inc., is premised

upon its acquisition of assets and assumption of liabilities of Stone & Webster, Inc.

and/or Stone & Webster Engineering Corporation in July of 2000.  Dkt. #1.  As set forth

-8-

above, however, the only CanFibre contract assumed by the designees of The Shaw

Group, Inc., *to wit*, SWINC Acquisition Three, Inc., was terminated prior to the

bankruptcy court's July 13, 2000 approval of the sale of assets and the July 14, 2000

effective date of the Asset Purchase Agreement.  Dkt. #46, Exh. A & B.  Moreover, the

bankruptcy court explicitly ordered that the transfer of assets pursuant to the Asset

Purchase Agreement "will not subject Shaw to any liability whatsoever with respect to

the operation of the Debtors' businesses prior to the Closing Date or by reason of such

transfer . . . including, without limitation, any theory of equitable subordination or

successor or transferee liability."  Dkt. #10-3, p.25.


Fed. R. Civ. P. 56(f) Request for Discovery

        In response to the Court's conversion of the motion to dismiss to a motion

for summary judgment, plaintiff's counsel affirms that he is unable to oppose the motion

absent the opportunity to conduct discovery "on the issues of successor-in-interest and

liability consistent with the causes of action outlined in plaintiff's Complaint as well

as . . . on the issue of the insurance coverage existent that covered the risks associated

with this project regardless of whether the moving defendant did not voluntarily assume

the liabilities for the project in question."  Dkt. #48, ¶ 4.


        Fed. R. Civ. P. 56(f) provides that

> Should it appear from the affidavits of a party opposing the
> motion that the party cannot for reasons stated present by
> affidavit facts essential to justify the party's opposition, the
> court may refuse the application for judgment or may order a
> continuance to permit affidavits to be obtained or

depositions to be taken or discovery to be had or may make
such other order as is just.

"To request discovery pursuant to Fed. R. Civ. P. 56(f), a party must file an affidavit

describing: (1) what facts are sought and how they are to be obtained; (2) how these

facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts

the affiant has made to obtain them; and (4) why the affiant's efforts were

unsuccessful."  *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004).  The denial of a

motion for discovery under Fed. R. Civ. P. 56(f) is reviewed for abuse of discretion.

*Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994).


　　　　　In the instant case, plaintiff has failed to demonstrate how the opportunity

for discovery could contradict documentation establishing that the corporation

responsible for the engineering, design, construction and/or installation of the conveyor

system is a bankrupt Delaware corporation which has not been served in this action

and that the Louisiana corporations which have been served did not assume any

contracts with CanFibre.  Moreover, inasmuch as the bankruptcy court relieved The

Shaw Group, Inc. and it's designees from any liability with respect to the operations of

the Delaware corporations prior to the effective date of the Asset Purchase Agreement,

any available insurance coverage would flow from the bankrupt Delaware corporations,

not the Louisiana corporations.


## **CONCLUSION**

　　　　　Based on the foregoing, it is recommended that the motion to dismiss

plaintiff's first, second, third, fourth and fifth causes of action against defendant Stone &

Webster, Inc., and first cause of action against The Shaw Group, Inc. (Dkt. #8), and the

motion to dismiss defendant Con-Vey/Keystone, Inc.'s seventeenth affirmative defense

and cross claim against The Shaw Group, Inc., and nineteenth affirmative defense and

cross claim against Stone & Webster, Inc. (Dkt. #13), be converted to motions for

summary judgment and **GRANTED**.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the

Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be

filed with the Clerk of this Court within ten (10) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute,

Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments,

case law and/or evidentiary material which could have been, but was not presented to

the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v.*

*Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an</u>

<u>extension of such time waives the right to appeal the District Court's Order</u>.  *Thomas v.*

*Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Order and a copy of the Report and Recommendation to counsel for the parties.

**SO ORDERED.**

DATED:      Buffalo, New York
            September 18, 2006

**S/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**